IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:23-cv-00216-FL

| | |
|---|---|
| JOHN DOE 2,<br><br>    Plaintiff,<br><br>v.<br><br>NORTH CAROLINA STATE UNIVERSITY, RAYMOND M. HARRISON, in his official capacity; and ROBERT M. MURPHY, JR., in his individual and official capacities,<br><br>    Defendants. | **DEFENDANT NORTH CAROLINA STATE UNIVERSITY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**<br><br>Fed. R. Civ. P. 12(b)(6) |

Defendant North Carolina State University ("NC State") respectfully submits this Memorandum in Support of Its Motion to Dismiss Plaintiff's Amended Complaint (DE 39).

## NATURE OF THE CASE

John Doe 2[1] was allegedly a student-athlete at NC State in 2020 and 2021. He filed this action against NC State for alleged hostile educational environment and deliberate indifference under Title IX in connection with alleged sex discrimination stemming from inappropriate conduct and contact from athletic trainer Robert M. Murphy, Jr. ("Murphy"). Doe 2's Amended Complaint, though based on the same underlying facts as the original Complaint, asserts new allegations and claims against NC State and Murphy. The Amended Complaint purports to add Raymond M. Harrison ("Harrison") in his official capacity but does not appear to allege any claim against him. The claims against NC State fail to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and should be dismissed.

---

[1] For reasons more fully set out in Defendant's Response to Plaintiff's Motion for Leave to Proceed Anonymously, NC State opposes the Plaintiff proceeding anonymously here; however, NC State refers to Plaintiff herein as "Doe 2" for ease of reference.

However, the fact that NC State seeks dismissal of these claims should not be construed to mean that either NC State or its leadership condones sexual misconduct. Rather, to be clear, sexual misconduct of any kind is completely unacceptable, is prohibited by NC State's policies, and is in direct opposition to the mission, culture, and standards of NC State.

## STATEMENT OF THE FACTS[2]

Doe 2 attended NC State as a student-athlete in 2020 and 2021. (DE 39 ¶¶ 9, 21 [hereinafter "Am. Compl."].) He was recruited and awarded an athletic scholarship to attend the institution. (Am. Compl. ¶¶ 9, 20.) While Doe 2 was enrolled at NC State, Murphy was the Director of Sports Medicine. (Id. ¶ 21.) In this role, Murphy provided "direct oversight and coordination of day-to-day athletic training, medical services operations, and sports medicine facility management for" NC State's teams and student-athletes. (Id. ¶¶ 24, 27.)

Doe 2 alleges that in 2021, he was experiencing and sought treatment for pain, and that on two occasions, Murphy touched his genitals during treatment. (Id. ¶¶ 29–50.) This interaction prompted Doe 2 to "doubt[]" whether Murphy's conduct was within the confines of "professionally acceptable athletic training technique[s] for a licensed athletic trainer[,]" (id. ¶ 52), and, thereafter, Doe 2 refused to "allow Murphy to treat him when he needed assistance from the Sports Medicine Department trainers[,]" (id. ¶ 54).

The Amended Complaint includes no allegation that Doe 2 reported Murphy's alleged conduct to anyone affiliated with NC State. Rather, Doe 2 alleges only that "Head Soccer Coach Kelly Findley" and two assistant coaches were "aware of Murphy's reportable sexual conduct towards student-athletes prior to 2016, had discussed it amongst themselves, and had not

---

[2] NC State recites the allegations in Plaintiff's Amended Complaint because the Plaintiff's allegations are taken as true for purposes of a motion under Rule 12(b)(6). See, e.g., In re Birmingham, 846 F.3d 88, 92 (4th Cir. 2017). Any such recitation of facts herein should not be taken as an admission of said facts or concession to their veracity.

immediately reported it to" the senior associate athletic director. (Id. ¶ 63.) Doe 2 alleges that, "[i]n early 2016, Findley told Senior Associate Athletic Director Sherard Clinkscales[] that Murphy was engaged in what he suspected was sexual grooming of male student-athletes." (Id. ¶ 59(b)).

## LEGAL STANDARD

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). "To survive a Rule 12(b)(6) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Elliot v. Am. States Ins. Co., 883 F.3d 384, 395 (4th Cir. 2018) (internal quotation marks omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[A] complaint must allege facts sufficient 'to raise a right to relief above the speculative level, thereby nudging the claims across the line from conceivable to plausible.'" Burnette v. Fahey, 687 F.3d 171, 180 (4th Cir. 2012) (internal quotation marks and alterations in original omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Ashcroft, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

In conducting this review, "a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, a court need not take as true "bare legal conclusions" or statements unsupported by sufficient factual allegations, Burnette, 687 F.3d at 180, or mere recitations of the elements of a cause of action, Ashcroft, 556 U.S. at 678.

3

## ARGUMENT

### I. DOE 2 FAILS TO STATE A CLAIM UNDER TITLE IX FOR HOSTILE EDUCATIONAL ENVIRONMENT OR DELIBERATE INDIFFERENCE.

Based on the allegations in the Amended Complaint as pleaded, Doe 2 fails to state a claim upon which relief may be granted under either of his Title IX theories. Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). "[S]exual harassment can constitute discrimination on the basis of sex under Title IX[.]" Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 283 (1998). The Supreme Court has recognized a narrow private cause of action under Title IX for a student who has been sexually harassed by an employee or another student of the covered institution. See generally id.; see also Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. of Educ., 526 U.S. 629 (1999). As the Fourth Circuit has explained,

> [t]o establish a Title IX claim on the basis of sexual harassment, a plaintiff must show that (1) she was a student at an educational institution receiving federal funds, (2) she was subjected to harassment based on her sex, (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution.

Jennings v. Univ. of N.C., 482 F.3d 686, 695 (4th Cir. 2007). Doe 2 cannot meet the standard outlined by the Fourth Circuit in Jennings because he has not alleged a sufficient basis for imputing liability to NC State.[3]

"An institution can be held liable for a Title IX violation only if 'an official who . . . has authority to address the alleged discrimination and to institute corrective measures . . . has actual

---

[3] The Amended Complaint contains separate counts for Hostile Educational Environment and Deliberate Indifference. However, because both claims are rooted in Title IX, Doe 2 must show a basis for imputing liability to NC State under either theory to survive dismissal.

knowledge of discrimination in the [institution's] programs and fails adequately to respond' or displays 'deliberate indifference' to discrimination." Jennings, 482 F.3d at 700 (alteration and omissions in original) (quoting Gebser, 524 U.S. at 290). The Fourth Circuit has previously adopted the standard that "Title IX liability may be imposed only upon a showing that . . . officials possessed actual knowledge of the discriminatory conduct in question." Baynard v. Malone, 268 F.3d 228, 238 (4th Cir. 2001), cert. denied, 535 U.S. 954 (2002). Furthermore, "to be liable under Title IX, an appropriate school official must be 'advised of' the alleged misconduct." Doe v. Fairfax Cnty. Sch. Bd., 1 F.4th 257, 266 (4th Cir. 2021) (second emphasis in original) (quoting Gebser, 524 U.S. at 290). As explained in Fairfax County, "actual notice of [sexual] harassment for Title IX purposes" requires that "a school official with authority to address complaints of sexual harassment and to institute corrective measures receives a report[.]" Id. at 265.

Doe 2's Amended Complaint fails to allege that NC State officials with authority to address complaints of sexual harassment had actual notice of Murphy's misconduct. Indeed, the Amended Complaint offers no allegations that Doe 2 ever informed anyone of the alleged harassment, let alone an "appropriate person" as required by law. The Amended Complaint only alleges that in February 2016, the head coach of the men's soccer team informed Sherard Clinkscales ("Clinkscales") that Murphy was engaging in "what he suspected was sexual grooming of male student-athletes." (Am. Compl. ¶ 59(b).) Setting aside the substance of this report and its sufficiency to serve as actual notice of harassment, in order to survive dismissal, the actual notice must be provided to an "appropriate person." These requirements are independently dispositive on a Title IX claim; that is, without both (i) a sufficient allegation (ii) made to an "appropriate person," Plaintiff's claim fails.

5

While the Fourth Circuit has found that allegations of suspicions of conduct consistent with "grooming" satisfy the sufficient allegation requirement, Doe v. N.C. State Univ., 125 F.4th 498, 503–07 (4th Cir. 2025), it specifically left open the question of whether Clinkscales may be considered an "appropriate person" for Title IX purposes, see id. at 507 ("[F]or the university to have actual notice, the report of Murphy's sexual grooming must have reached an appropriate official. . . . [W]e remand the case to the district court to decide this issue."). Doe 2's Amended Complaint does not adequately allege that Clinkscales was an "appropriate person."

The Amended Complaint alleges that Clinkscales was NC State's senior associate athletic director of student services and sports administration. (Am. Compl. ¶ 23.) The Amended Complaint does not include any allegations regarding Clinkscales' duties, powers, or responsibilities, let alone any supervisory or disciplinary authority over Murphy and Title IX complaints in general. In fact, Clinkscales's name is only mentioned to describe that he was Harrison's predecessor, (id. ¶ 11), that Clinkscales chaired a hiring committee that recommended to the Athletic Director and Chancellor that NC State hire Murphy, (id. ¶ 23), that Findley informed Clinkscales in 2016 of suspected grooming, (id. ¶¶ 59(b), 61(d)(iii), 63, 79(b)), that Clinkscales possessed actual knowledge of Murphy's alleged conduct, (id. ¶ 79(e)), and that he disregarded or concealed Findley's report from other NC State staff, (id. ¶ 106). The Amended Complaint does not allege that Clinkscales had the authority to hire a new athletic trainer, fire Murphy, or suspend Murphy for misconduct, factors the Fourth Circuit has found necessary for a person to be an "appropriate person" for Title IX purposes. See Baynard, 268 F.3d at 238–39 (holding that despite principal's possession of responsibility to supervise other employees, evaluate their performance, and recommend discipline, she was not an "appropriate person" for Title IX purposes because she did not have the power to "hire, fire, or suspend").

6

In Baynard, a principal possessed supervisory authority over teachers and was responsible for administration of the school; in addition, she could evaluate employee performance and recommend that certain individuals be hired, fired, or transferred. Id. at 239. However, because the principal did not possess the "traditional powers of an employer[,]" defined as the authority to hire and terminate employees, the Fourth Circuit held she could not be considered an appropriate person whose knowledge of misconduct could impute Title IX liability to the school board. Id. Doe 2's Amended Complaint does not allege that Clinkscales had the authority to hire, terminate, or suspend Murphy. See Baynard, 268 F.3d at 238–39 (holding that despite principal's possession of responsibility to supervise other employees, evaluate their performance, and recommend discipline, she was not an "appropriate person" for Title IX purposes because she did not have the power to "hire, fire, transfer, or suspend"). Therefore, Clinkscales's alleged knowledge from reports of grooming in 2016 cannot be used to support the contention that NC State had knowledge of Murphy's alleged conduct.

Because Doe 2 fails to allege that actual notice of Murphy's misconduct was given to an appropriate official at NC State, Doe 2 has not sufficiently alleged that NC State had actual knowledge of the alleged misconduct. Without that knowledge, NC State cannot have created or perpetuated a hostile educational environment or displayed deliberate indifference. Therefore, Doe 2's Title IX claims against NC State should be dismissed.

## CONCLUSION

For the foregoing reasons, NC State respectfully requests that this Court grant its Motion and dismiss it from this action with prejudice.

Respectfully submitted, this the 3rd day of September, 2025.

**ELLIS & WINTERS LLP**

/s/Alex J. Hagan
Alex J. Hagan
N.C. Bar No. 19037
Chelsea Pieroni
N.C. Bar No. 59816
Post Office Box 33550
Raleigh, NC 27636
Tel: (919) 865-7000
Fax: (919) 865-7010
alex.hagan@elliswinters.com
chelsea.pieroni@elliswinters.com

Dixie T. Wells
N.C. Bar No. 26816
Post Office Box 2752
Greensboro, NC 27402
Tel: (336) 217-4193
Fax: (336) 217-4198
dixie.wells@elliswinters.com

Counsel for Defendant North Carolina State University

8

Case 5:23-cv-00216-FL    Document 53    Filed 09/03/25    Page 8 of 9

**ELLIS & WINTERS LLP**

/s/Alex J. Hagan
Alex J. Hagan
N.C. Bar No. 19037
Chelsea Pieroni
N.C. Bar No. 59816
Post Office Box 33550
Raleigh, NC 27636
Tel: (919) 865-7000
Fax: (919) 865-7010
alex.hagan@elliswinters.com
chelsea.pieroni@elliswinters.com

Dixie T. Wells
N.C. Bar No. 26816
Post Office Box 2752
Greensboro, NC 27402
Tel: (336) 217-4193
Fax: (336) 217-4198
dixie.wells@elliswinters.com

Counsel for Defendant North Carolina State University

# CERTIFICATE OF WORD COUNT

The undersigned hereby certifies that this brief complies with the word limit requirements of Local Civil Rule 7.2(f)(3)(A) of the United States District Court for the Eastern District of North Carolina. In making this certification, the undersigned certifies that the above brief contains 2,089 words, as reported by the word count feature of word processing software.

This the 3rd day of September, 2025.

/s/Alex J. Hagan
Alex J. Hagan